## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 2:21-cv-2664 |
| v. | ) ) | |
| TRUSTMARK NATIONAL BANK, | ) ) | |
| Defendant. | ) ) | |

## <u>CONSENT ORDER</u>

## I.  INTRODUCTION

The Parties jointly submit this Consent Order for approval and entry by the Court.  The Order resolves all claims of the United States of America ("United States") and Consumer Financial Protection Bureau ("Bureau") (collectively "Plaintiffs") simultaneously filed in a Complaint, alleging that Trustmark National Bank ("Trustmark" or "the Bank") engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, Regulation B, 12 C.F.R. § 1002.1 *et seq.*, and the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5536(a)(1)(A), by discriminating on the basis of race, color, and national origin. Specifically, Plaintiffs allege that Trustmark engaged in illegal redlining by avoiding providing home loans and other mortgage services, and engaged in discrimination and conduct that would discourage mortgage applications from prospective applicants who are residents of or seeking

credit in majority-Black and Hispanic census tracts in the Memphis, Tennessee-Mississippi-Arkansas Metropolitan Statistical Area ("Memphis MSA").

The Court has jurisdiction over the Parties and subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the Complaint. Entry of this Consent Order is in the public interest. The Parties agree that the full implementation of the terms in this Consent Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with Trustmark's legitimate business interests. The Bank neither admits nor denies any of the allegations in the Complaint except that, for the purposes of this Consent Order, the Bank admits facts necessary to establish this Court's jurisdiction over it and over the subject matter of this action.

## II.    BACKGROUND

Trustmark is a national bank headquartered in Jackson, Mississippi. Trustmark offers commercial, consumer, mortgage, and wealth management banking services. Trustmark currently operates 196 branches in Mississippi, Tennessee, Alabama, Texas, and Florida, including 22 branches in the Memphis MSA. As of December 31, 2020, Trustmark had total assets of $16.550 billion. Trustmark is the principal subsidiary of Trustmark Corporation, a holding company.

On April 6, 2020, the Office of the Comptroller of the Currency ("OCC") notified the United States that, based on information gathered during a fair lending examination of Trustmark the OCC initiated in 2018, it had information suggesting that, between 2014 and 2016, Trustmark structured its mortgage operations in the Memphis MSA to avoid providing equal access to credit to residents seeking mortgage loans in majority-minority areas and thereby may have engaged in a pattern or practice of discrimination in violation of the FHA.

On June 9, 2020, the United States notified Trustmark that it was opening an investigation into whether Trustmark had engaged in unlawful redlining in violation of the FHA and ECOA. The Bureau also opened an investigation into this matter. After conducting their own investigations and reviewing the information provided by the OCC, the Plaintiffs contend that, between 2014 and 2018, Trustmark avoided serving the credit needs of and discouraged those residing or seeking credit in majority-Black and Hispanic census tracts in the Memphis MSA from obtaining mortgage loans, while acting to serve the credit needs for mortgage loans in majority-white census tracts.

## III.    TERMS OF THE ORDER

### A.    Lending Practices

1.    Trustmark, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race, color, or national origin that: (a) violates the FHA in any aspect of a residential real estate-related transaction; or (b) violates ECOA and Regulation B in any aspect of a credit transaction.

2.    Trustmark will ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit, regardless of the demographic composition of the area in which a person lives or the location of the property securing the loan.

3.    For purposes of this Consent Order, Trustmark's "Memphis lending area" consists of Shelby County and Fayette County in Tennessee and DeSoto County in Mississippi.

4.    For purposes of this Consent Order, a "majority-Black and Hispanic" census tract is one where more than 50 percent of the residents are identified as either "Black or African

American" or "Hispanic or Latino" by the United States Census Bureau. A "majority-white" census tract is one where more than 50 percent of the residents are identified as "non-Hispanic white" by the United States Census Bureau.

**B.    Fair Lending Compliance**

5.    Within 90 days of the date this Consent Order is entered ("Effective Date"), Trustmark must conduct a detailed assessment of Trustmark's fair lending program in the Memphis lending area, specifically as it relates to fair lending obligations and lending in majority-Black and Hispanic census tracts. Trustmark must produce a written report ("Fair Lending Status Report and Compliance Plan") that includes a review of Trustmark's existing fair lending policies and practices, an analysis of Trustmark's policies and practices related to branch locations; loan officers' solicitation of applications, training, oversight, and compensation; loan officer recruitment, including recruitment of loan officers of color; marketing; and fair lending compliance monitoring.

6.    Within 120 days of the Effective Date, Trustmark will submit the Fair Lending Status Report and Compliance Plan described in Paragraph 5 to the Plaintiffs, subject to non-objection by Plaintiffs. The Fair Lending Status Report and Compliance Plan will specifically include, at least:

a.    A description of steps Trustmark has taken to revise all of Trustmark's mortgage lending policies and practices that pose redlining risks, including at a minimum, risk that may arise from branch or loan officer office location; types of loan products; and marketing;

b.  The adopted written policies and procedures regarding training and monitoring the activities of loan officers in marketing Trustmark's mortgage loan products, soliciting, and originating mortgage loans;

c.  A description of Trustmark's formal process for ongoing statistical monitoring of mortgage underwriting, pricing, and redlining risk, including statistical peer analysis of applications and originations from majority-Black and Hispanic census tracts; and

d.  Steps Trustmark will take to effectively and promptly revise its mortgage lending policies and practices to ensure compliance with ECOA, Regulation B, and the FHA.

7.      If the United States or the Bureau object to any portion of Trustmark's Fair Lending Status Report and Compliance Plan, Trustmark will make revisions and resubmit its proposal within 14 days of receiving the objection.  Trustmark will begin implementation of its Fair Lending Status Report and Compliance Plan within 14 days of receiving non-objections from the Plaintiffs. Any material changes to Trustmark's Fair Lending Status Report and Compliance Plan are subject to non-objection by the Plaintiffs.

### C.    Fair Lending Training

8.      Within 30 days of the Effective Date, Trustmark will provide a copy of the Complaint and Consent Order in this matter to all employees with substantive involvement in mortgage lending, marketing, or fair lending or CRA compliance, or who have management responsibility over such employees; senior management with fair lending and marketing oversight; and members of the Board of Directors (collectively, "the Relevant Bank Staff and Officials"). Trustmark will provide an opportunity for the Relevant Bank Staff and Officials to ask any

questions concerning the Complaint and Consent Order, and the Bank will provide answers. Trustmark will implement a system for each individual to acknowledge that they received a copy of this Complaint and Consent Order and had the opportunity to ask questions. Trustmark will provide a report that includes these acknowledgements to the Plaintiffs, as well as a list of all persons and their titles to whom this Consent Order was delivered within 45 days of the Effective Date.

9.      Trustmark will provide training to the Relevant Bank Staff and Officials on Trustmark's obligations under ECOA, Regulation B, and the FHA and Trustmark's obligations under this Consent Order. The training will be conducted by an independent, qualified third-party trainer selected by Trustmark and subject to non-objection by the Plaintiffs. Within 60 days of the Effective Date, Trustmark will submit the qualifications of the third-party trainer to the Plaintiffs for non-objection. Within 30 days of receiving non-objections from the Plaintiffs regarding the independent, qualified third-party trainer, Trustmark will submit the proposed training curriculum to the Plaintiffs for non-objection. Within 30 days of receiving non-objections from the Plaintiffs regarding the proposed training curriculum, Trustmark will deliver the training described in this Paragraph. Trustmark will implement a system for each individual to acknowledge that they completed fair lending training and will provide a report that includes these acknowledgements to the Plaintiffs 30 days after it has delivered the training.

10.     Trustmark will provide the training described in Paragraph 9 annually to the Relevant Bank Staff and Officials. Trustmark will implement a system for each individual to acknowledge that they completed fair lending training. Trustmark will provide a report that includes these acknowledgements to the Plaintiffs within 10 days of the training. Any proposed

changes to the third-party trainer or the training curriculum are subject to non-objection by the Plaintiffs.

11.     Any individual who becomes a Relevant Bank Staff or Official will, within 30 days of beginning the covered position, receive a copy of the Complaint and Consent Order, with the opportunity to ask questions, as discussed in Paragraph 8.  Any individual who becomes a Relevant Bank Staff or Official will, within 60 days of beginning the covered position, receive the training discussed in Paragraph 9.   Trustmark will implement a system for each such individual to acknowledge that they received a copy of the Complaint and Consent Order, were given the opportunity to ask questions, and that they completed fair lending training.  Trustmark will provide a report that includes these acknowledgements to the Plaintiffs no later than 10 days after an individual becomes a Relevant Bank Staff or Official.

12.     Trustmark will bear all costs associated with the trainings.

**D.     Community Credit Needs Assessment**

13.     Trustmark will submit to the Plaintiffs for non-objection a Community Credit Needs Assessment for majority-Black and Hispanic census tracts within its Memphis lending area. A Community Credit Needs Assessment is a research-based market study to help a lender identify the needs for financial services in an area.  This assessment must include the following information about majority-Black and Hispanic census tracts within Trustmark's Memphis lending area: (1) an evaluation (to include market research and interviews) of residential mortgage credit needs and current lending opportunities available in the area; (2) recent demographic and socioeconomic data; (3) potential strategies for Trustmark to provide residential mortgage lending services in these census tracts; (4) a review of loan products offered by other lenders and their success in the market; (5) an overview of federal, state, and local programs that are available to residents seeking

and obtaining residential mortgage loans; and (6) recommendations that address how each requirement of the Consent Order should be carried out to best achieve the remedial goals of this settlement.

14.    The Community Credit Needs Assessment will be conducted by an independent, qualified third-party consultant selected by Trustmark and subject to non-objection by the Plaintiffs.  Within 60 days of the Effective Date, Trustmark will submit the qualifications of the third-party consultant to the Plaintiffs for non-objection.  Within 30 days of receiving non-objections from the Plaintiffs regarding the third-party consultant, Trustmark must submit to the Plaintiffs, for non-objection, a statement of work from the independent third-party consultant describing their methodology for the assessment.  Within 60 days of receiving non-objections from the Plaintiffs regarding the statement of work, Trustmark will submit to the Plaintiffs the Community Credit Needs Assessment described in Paragraph 13.

15.    Once the Plaintiffs have non-objected to the Community Credit Needs Assessment, Trustmark will present the Assessment to all Trustmark committees responsible for overseeing fair lending compliance.

16.    Within 60 days of receiving non-objections from the Plaintiffs of the Community Credit Needs Assessment, Trustmark will submit a remedial plan that details, in light of the recommendations made in the Assessment, the actions Trustmark proposes to take to comply with the requirements of the Consent Order (e.g., physical expansion, loan subsidy, community partnerships, and advertising), including specific timeframes and implementations of these actions. The proposals within the remedial plan will be subject to non-objection by the Plaintiffs.

###### E.      Community Lending Manager

17.      Trustmark already has designated a full-time Community Lending Manager responsible for facilitating and promoting community lending products and activities throughout Trustmark's service areas with an emphasis on increasing mortgage loan applications for low- and moderate-income borrowers and borrowers of color.  Trustmark also has designated a full-time Community Development Manager focused on the Memphis MSA who implements and administers all aspects of Trustmark's Memphis diverse market strategy to promote and enhance Trustmark's market visibility in diverse communities.  Trustmark must maintain these positions and staff them throughout the term of this Consent Order.

###### F.      Physical Expansion to Serve Majority-Black and Hispanic Census Tracts

18.      In February 2021, Trustmark opened a full-service branch in a majority-Black and Hispanic census tract in the Memphis MSA.  Subject to appropriate regulatory approval, Trustmark must open one new mortgage loan production office ("LPO").  The LPO must be in a retail-oriented space in a visible location located in a majority-Black and Hispanic census tract in Trustmark's Memphis lending area and will have signage that is visible to the general public.  The specific site of the LPO will be subject to non-objection by the Plaintiffs.  The LPO must provide, at a minimum, the full range of mortgage products typically offered by Trustmark's mortgage loan officers and community lending specialists, and maintain hours of operation equivalent to Trustmark's full-service branches.  Trustmark will assign at least two mortgage loan officers or community lending specialists office space in this LPO.

19.      Trustmark must make all reasonable efforts to open the LPO within 18 months of the Effective Date.  If Trustmark fails to open an LPO within 18 months of the Effective Date,

Trustmark will provide to the Plaintiffs a written proposal describing how it will comply with Paragraph 18.

20.    Trustmark will evaluate future opportunities for expansion within its Memphis lending area, whether by acquisition or opening new branches or LPOs, in consideration of the goals of this Consent Order and the Community Credit Needs Assessment.  Trustmark must notify the Plaintiffs of any plans to open or acquire any new branches or other LPOs within its Memphis lending area at the same time that it notifies other regulators.

21.    Within 180 days of the Effective Date, Trustmark will assign no fewer than four mortgage loan officers or community lending specialists office space in branches or LPOs in Trustmark's existing branch network in majority-Black and Hispanic census tracts.

**G.    Loan Subsidy Fund**

22.    Trustmark will invest a minimum of $3.85 million in a loan subsidy fund to increase credit for home mortgage loans, home improvement loans, and home refinance loans for consumers applying for loans in majority-Black and Hispanic census tracts in its Memphis lending area.  No more than twenty-five percent of the loan subsidy fund may be used for home refinances.

23.    Loan subsidies under the loan subsidy fund can be provided by the following means:

      a.  a direct grant for the purpose of down payment assistance (when the subsidy is less than the loan balance);

      b.  a direct grant for the purpose of closing cost assistance;

      c.  payment of mortgage insurance premiums on loans subject to such mortgage insurance; and

    d.  any other appropriate assistance measures approved by the United States in

       writing.

No applicant may receive a total subsidy greater than $10,000 per loan.

24.    Under the loan subsidy fund, Trustmark will subsidize loans made to "qualified applicants." A "qualified applicant" is any applicant who: (a) qualifies for a loan under Trustmark's underwriting standards; and (b) applies for a loan secured by residential property located in a majority-Black or Hispanic census tract in the Memphis lending area that will serve as the borrower's primary residence.

25.    No provision of the Consent Order, including any loan subsidy or equivalent program, requires Trustmark to make any unsafe or unsound loan or to make a loan to a person who is not qualified for the loan based upon lawful, nondiscriminatory terms; however, Trustmark may choose to apply more flexible underwriting standards in connection with its programs under this Consent Order. Trustmark's underwriting standards applied to residents of majority-Black and Hispanic census tracts must be no less favorable than the standards applied in majority-white census tracts.

### H.    Community Development Partnership Program

26.    Trustmark will partner with one or more community-based or governmental organizations that provide the residents of majority-Black and Hispanic census tracts in the Memphis lending area with services related to credit, financial education, homeownership, and foreclosure prevention. Trustmark will develop these partnerships in a manner consistent with achieving the goals of the Consent Order. Through these partnerships, Trustmark must spend a minimum of $400,000 over the term of the Consent Order on services to residents of majority-

Black and Hispanic census tracts in the Memphis lending area that increase access to residential mortgage credit.

27.    Within 180 days of the Effective Date, Trustmark will submit a proposal to the United States describing how it will implement the requirements of Paragraph 26.  The proposal will include an explanation of its proposed partner(s).  The proposal should also describe, to the extent available, Trustmark's plans to implement the partnership(s), as well as a description of how the partnership(s) will be used to meet the credit needs identified in the Community Credit Needs Assessment.  The proposal will be subject to non-objection by the United States.

28.    Trustmark will evaluate the partnership(s) outlined in Paragraph 26 annually, including by considering the Community Credit Needs Assessment, in order to identify any needed changes to the program or better assist residents of majority-Black and Hispanic census tracts in the Memphis lending area in obtaining credit.  Trustmark will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 48.  Any proposed changes will be subject to non-objection by the United States.

**I.    Advertising, Community Outreach, Consumer Financial Education, and Credit Counseling Initiatives**

29.    Trustmark will spend at least $200,000 per year on advertising, outreach, consumer financial education, and credit counseling in the Memphis lending area described in this Section.

30.    Within 180 days of the Effective Date, Trustmark will submit an Advertising, Outreach, and Education Plan ("Outreach Plan") to the Plaintiffs detailing how it will spend these funds for the period remaining in the term of the Consent Order.  The Outreach Plan will include an explanation of why Trustmark selected certain tactics and community partnerships and how Trustmark's advertising, community outreach, education, and credit counseling initiatives will meet the credit needs identified in the Community Credit Needs Assessment.  The Outreach Plan

12

will be subject to non-objection by the Plaintiffs.  If the Plaintiffs object to any portion of the Outreach Plan, Trustmark will make revisions and resubmit its proposal within 14 days of receiving the Plaintiffs' objection.  Trustmark will begin implementation of its Outreach Plan within 14 days of receiving non-objection from the Plaintiffs.

31.    Trustmark will evaluate the strategies outlined in its Outreach Plan annually, including by considering the Community Credit Needs Assessment, in order to identify any changes necessary to better assist residents of majority-Black and Hispanic census tracts in its Memphis lending area in obtaining credit.  Trustmark will present a summary of its evaluation and any proposed changes to the Plaintiffs as part of its annual reporting requirement under Paragraph 48.  Any proposed changes will be subject to non-objection by the Plaintiffs.

### i.    Advertising

32.    Trustmark will endeavor to effectively advertise its residential loan products, including products for which the loan subsidy fund outlined in Section G will be applied, to majority-Black and Hispanic census tracts in its Memphis lending area and will target advertising to generate mortgage loan applications from qualified applicants in these census tracts. Trustmark's advertising may include print media, radio, Internet advertising, television, direct mail, and any other appropriate medium non-objected to by the Plaintiffs in writing.  These advertisements must include similar information to other advertisements by Trustmark.  Trustmark must advertise its mortgage lending services and products to majority-Black and Hispanic census tracts in its Memphis lending area at least to the same extent that it advertises its mortgage lending services and products to majority-white census tracts in its Memphis lending area.

33.    Trustmark will create point-of-distribution materials, such as posters and brochures, targeted toward majority-Black and Hispanic census tracts to advertise products and services.  Trustmark will place or display these promotional materials in its branch offices.

34.    All of Trustmark's print advertising and promotional materials referencing residential mortgage loans will contain an equal housing opportunity logo, slogan, or statement. All radio or television advertisements will include an audible statement that Trustmark is an "Equal Opportunity Lender" or "Equal Housing Lender."

### ii.    Outreach

35.    Trustmark will provide four outreach programs per year for real estate brokers and agents, developers, and public or private entities engaged in residential real estate-related business in majority-Black and Hispanic census tracts to inform them of its products and services and to develop business relationships.

36.    Trustmark may underwrite or sponsor non-profit events in support of the majority-Black and Hispanic census tracts in its Memphis lending area that are related to building relationships within those areas and designed to generate applications for home mortgages.

### iii.    Consumer Financial Education and Credit Counseling

37.    Trustmark will develop a consumer education program designed to provide information, training, and counseling services about consumer finance to individuals in majority-Black and Hispanic census tracts in its Memphis lending area.

38.    Trustmark will provide a minimum of six seminars per year targeted toward residents in majority-Black and Hispanic census tracts in its Memphis lending area.  These seminars will cover credit counseling, financial literacy, and other related education, to help identify and develop qualified loan applicants from those areas.

39.     Trustmark may develop and provide the consumer education seminars described in Paragraphs 37 and 38 in conjunction with the community-based or governmental organization that Trustmark partners with as described in Section H.

40.     Beginning after the Effective Date and during the first year of the term of this Consent Order, Trustmark may conduct the outreach programs and consumer education seminars described in Paragraphs 35, 37, and 38 by hosting in-person events offered at a location reasonably convenient to the attendees or by hosting virtual events.  Beginning 12 months after the Effective Date, Trustmark will submit to the Plaintiffs a list of its planned outreach programs and consumer education seminars, specifying whether those events will be in-person or virtual, as part of its annual reporting requirement under Paragraph 48.  The virtual nature of these programs and seminars will be subject to non-objection by the Plaintiffs.

## IV.    CIVIL MONEY PENALTY

41.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Part I of this Consent Order and alleged in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Trustmark must pay a civil money penalty of $5 million to the Bureau.  Under 12 U.S.C. § 5565(c)(4), the amount Trustmark must pay will be remitted by $4 million upon Trustmark's satisfaction of its obligation to pay that amount in penalties to the OCC for related conduct.

42.     Within 10 days of the Effective Date, Trustmark must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

43.     The civil money penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

44.    Trustmark must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes.  Regardless of how the Bureau ultimately uses those funds, Trustmark may not:

a.    claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Consent Order; or

b.    seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Consent Order.

45.    To preserve the deterrent effect of the civil money penalty in any private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Trustmark based on substantially the same facts alleged in the Complaint ("Related Consumer Action"), other than the offset regarding payment to the OCC, Trustmark may not argue that it is entitled to, nor may it benefit by, any offset or reduction of any monetary remedies imposed in a Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund.  If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Trustmark based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Trustmark must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau, and pay the amount of the offset or reduction to the U.S. Treasury.  Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## V.    EVALUATING AND MONITORING COMPLIANCE

46.    Trustmark will retain all records related to its obligations under this Consent Order and all activities to carry out this Order.  The Plaintiffs have the right to review and copy these records upon request.

47.    Every year, within 30 days of its submission of data to the Federal Financial Institutions Examination Council ("FFIEC") in accordance with the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801–2811, Trustmark will provide this data to the Plaintiffs in the same format, including the record layout.

48.    Beginning 12 months after the Effective Date, Trustmark will submit annual reports to the Plaintiffs on its progress in complying with the terms of the Consent Order and associated plans and programs.  The final report will be delivered to the Plaintiffs at least 60 days prior to the expiration of the Consent Order.  The reports will provide a complete account of Trustmark's actions to comply with the Consent Order, Trustmark's assessment of the extent to which each obligation was met, an explanation of why Trustmark fell short of meeting its goals for any particular component, and recommendations for additional actions to achieve the goals set forth in the Consent Order and associated plans and programs.  Trustmark will attach to its reports copies of training materials and advertising and marketing materials distributed under this Consent Order. Trustmark's Board of Directors and CEO will review and approve the reports.  If the Plaintiffs raise any objections to a report, the Parties will have 14 days to confer and resolve their differences. The Parties may mutually agree to additional time to confer, if necessary.  If the Parties are unable to resolve their differences, either party may bring the dispute to the Court for resolution.

49.    All material required by this Consent Order will be sent to the United States by email to the Department of Justice attorney(s) assigned to this matter, and by commercial overnight delivery service addressed as follows:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division, U.S. Department of Justice
> 150 M Street NE, 8th Floor
> Washington, D.C. 20002
> Attn: DJ# 175-41-230

50.    Unless otherwise directed by the Bureau, all material required by this Consent Order will be sent to the Bureau with the subject line, "Re: Trustmark National Bank, Case No. _____ (W.D. Tenn.)," by overnight delivery service or first-class mail to the below addresses and contemporaneously by email to:

> CFPB_Enforcement_Compliance@cfpb.gov
>
> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington, D.C. 20552
>
> and
>
> Regional Director
> Southeast Region
> Consumer Financial Protection Bureau
> 1700 G Street, N.W.
> Washington D.C. 20552

## VI.    ROLE OF THE FAIR LENDING OVERSIGHT COMMITTEE

51.    Trustmark already has established a Fair Lending Oversight Committee that is responsible for monitoring the Bank's fair lending risks.  The Committee reviews the policies and

procedures that are in place for management of fair lending risks, facilitates communication between management and the Board of Directors, and reports regularly to the Board of Directors.

52.     The Fair Lending Oversight Committee will review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Plaintiffs.

53.     Until the termination of this Order, the Fair Lending Oversight Committee will be responsible for monitoring and coordinating Trustmark's adherence to the provisions of this Order.

54.     The Fair Lending Oversight Committee will provide quarterly updates to the Board of Directors on the steps Trustmark has taken and plans to take to comply with this Order.  These quarterly updates to the Board will include, but are not limited to, the following: (1)  monitoring loan officers' solicitation and origination of loans in majority-Black and Hispanic census tracts in the Memphis lending area, including the loan subsidy fund described in Section G; (2) Trustmark's residential mortgage lending performance in the majority-Black and Hispanic census tracts within its Memphis lending area and a comparison of Trustmark's applications and originations to institutions in the Memphis lending area with a similar volume of residential mortgage lending activity; (3) coordinating Trustmark's involvement in community lending initiatives and outreach programs; (4) encouraging and developing more lending within majority-Black and Hispanic census tracts; (5) promoting financial education; (6) providing financial counseling; and (7) building relationships with community groups.  The applicable quarterly updates will be attached to each annual report required by Paragraph 48.

## VII.    ADMINISTRATION

55.    The requirements of this Consent Order will remain in effect for five years, except as provided in Paragraph 56.  Trustmark's obligations under Paragraphs 1 and 2 of this Order will remain in effect permanently.

56.    If, within five years of the Effective Date, Trustmark has not invested all money in the loan subsidy fund described in Section G, the Consent Order will remain in full effect until three months after Trustmark has invested all the money in the loan subsidy fund and has submitted a final report to the Plaintiffs that demonstrates the fulfillment of this obligation.

57.    Trustmark will maintain all documents and records necessary to demonstrate full compliance with the Consent Order, including all submissions made to the Plaintiffs, until the requirements of Paragraphs 55 and 56 are fulfilled.

58.    Trustmark must make the documents identified in Paragraph 57 available to the Plaintiffs upon the Plaintiffs' request.

59.    Any time limits for performance may be extended by mutual written agreement of the Parties.  Other modifications may be made only upon approval of the Court, by motion by any party.  If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to the Consent Order.

60.    If disputes arise about the interpretation of, or compliance with, the Consent Order, the Parties will endeavor in good faith to resolve any dispute before bringing it to the Court for resolution.  If Trustmark violates any provision of the Consent Order or fails to perform an act required by the Consent Order, the Plaintiffs may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

61.    Nothing in the Consent Order excuses Trustmark's compliance with any currently or subsequently effective provision of law or order of a regulator.

62.    Trustmark will notify Plaintiffs of any development that may materially affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Trustmark; or a change in Trustmark's name or address.  Trustmark will provide this notice as soon as practicable after learning about the development.

63.    Within 10 days of the Effective Date, Trustmark will:

    a.  Designate at least one telephone number and email, physical, and postal address as points of contact, which Plaintiffs may use to communicate with Trustmark;

    b.  Identify all businesses for which Trustmark is the majority owner, or that Trustmark directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

64.    Trustmark will report any change in the information required to be submitted under Paragraph 63 as soon as practicable, but in any case, at least 30 days before the change.

65.    This Order is binding on Trustmark, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest.  If Trustmark seeks to transfer or assign all or part of its operations to a successor or assign that intends to carry on the same or

21

similar business, Trustmark will obtain the written agreement of the successor or assign to obligations under the Consent Order as a condition of sale, merger, or other transfer.

66.    The Parties agree that litigation is not reasonably foreseeable.  If any party implemented a litigation hold to preserve information, the party is no longer required to maintain it.  Nothing in this Paragraph relieves either party of any other obligations imposed by the Consent Order.

67.    The Parties to this Consent Order will bear their own costs and attorneys' fees.

68.    The Court will retain jurisdiction over this civil action to enforce the terms of this Consent Order.

SO ORDERED this 27th day of October, 2021.


  _/s/ Samuel H. Mays, Jr._ _____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

The undersigned hereby apply for and consent to the entry of this Consent Order:

**For the United States of America:**

JOSEPH C. MURPHY, JR.
Acting United States Attorney
Western District of Tennessee

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

JON M. SEWARD
Principal Deputy Chief

/s/ Eileen Kuo
EILEEN KUO (TN Bar No. 027365)
Assistant United States Attorney
United States Attorney's Office
Western District of Tennessee
167 North Main Street, Suite 800
Memphis, TN 38103
Phone: (901) 544-4231
Fax: (901) 544-4230
Eileen.Kuo@usdoj.gov

/s/ Marta Campos
/s/ Samantha Ondrade
MARTA CAMPOS (pro hac vice application pending)
SAMANTHA ONDRADE (pro hac vice application pending)
Trial Attorneys
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
Marta.Campos@usdoj.gov
Samantha.Ondrade@usdoj.gov

**For the Consumer Financial Protection Bureau:**

CARA PETERSEN
Acting Enforcement Director

DAVID RUBENSTEIN
Deputy Enforcement Director

CYNTHIA GOOEN LESSER
Assistant Deputy Enforcement Director

/s/ Jonathan Reischl
JONATHAN REISCHL (pro hac vice application pending)
JEFFREY BLUMBERG (pro hac vice

application pending)
NICHOLAS LEE (pro hac vice application
pending)
BENJAMIN HAZELKORN (pro hac vice
application pending)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Phone: (202) 435-9202
jonathan.reischl@cfpb.gov
jeffrey.blumberg@cfpb.gov
nicholas.lee@cfpb.gov
benjamin.hazelkorn@cfpb.gov

**For Trustmark National Bank:**

*/s/ Andrea K. Mitchell*
ANDREA K. MITCHELL (pro hac vice application pending)
Managing Partner

CHRISTOPHER T. NAPIER (pro hac vice application pending)
Partner

Mitchell Sandler LLC
1120 20th Street, NW
Suite 725
Washington, DC 20036
Telephone: (202) 886-5261
amitchell@mitchellsandler.com
cnapier@mitchellsandler.com